

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

April 18, 2022

<u>By ECF</u>
The Honorable Barbara C. Moses
United States Magistrate Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

      Re:    *Project South et al. v. United States Immigration and Customs Enforcement et al.*, 21 Civ. 8440 (ALC) (BCM)

Dear Judge Moses:

      This Office represents U.S. Immigration and Customs Enforcement, the U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, the U.S. Department of Justice Executive Office for Immigration Review, and the U.S. Department of State (collectively, the "Government"), the defendants in the above-referenced case filed under the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552 *et seq*. I write on behalf of both parties to provide a status update in advance of the April 25, 2022 conference pursuant to the Court's March 3, 2022 Order (ECF No. 33).

      By way of background, Plaintiffs Project South and the Center for Constitutional Rights filed this action to compel the release of agency records in connection with three FOIA requests to Defendants in April and June of 2021, seeking records concerning removals of Cameroonians from the United States in late 2020 and early 2021. The FOIA requests focus on (1) data regarding the demographic information of persons on deportation flights to Cameroon between August 2020 and January 20, 2021, (2) agency policies regarding deportation of Cameroonians and other migrants to areas of potential or known conflict, and (3) correspondence and communications among relevant government officials regarding removals of Cameroonians and conditions in Cameroon between August 1, 2020, and February 26, 2021.

      **United States Immigration and Customs Enforcement (ICE)**

      As an initial matter, ICE has identified the flights at issue in this case:

            October 13, 2020 – ICE Charter N225AX – 57 Cameroonian deportees

            November 11, 2020 – ICE Charter N207XA – 23 Cameroonian deportees

            January 6, 2021 – Commercial Flights Ethiopian Airlines ET 501, ET 905 – 1 Cameroonian deportee

      An additional charter flight was scheduled for February 4, 2021, but was ultimately cancelled.

    (i)    Search Terms and Custodians

ICE has identified three primary custodians for email communications: Bryan Cox, then-ICE Press Secretary, and two attachés to the US Embassy in Cameroon. ICE is searching these custodians' records using the search terms and senders/recipients in the FOIA request.

Plaintiffs' requests relating to policy documents have been referred to the Office of Regulatory Affairs and Policy (ORAP).

Plaintiffs' data requests have been referred to relevant ICE components. Plaintiffs' request for the number of Cameroonians held in ICE detention has been referred to ICE's Law Enforcement Systems Analysis Unit (LESA), and the number of Cameroonians held in specific detention facilities, to Field Operations. Plaintiffs' requests relating to ICE's FALCON, CHIVe, and LeadTrac systems were referred to Homeland Security Investigations (HSI). However, HSI has reported that it has no responsive records, so these requests were recently referred to Field Operations and Custody Management, both of which are divisions of ICE's Enforcement and Removal Operations.

    (ii)    Searches and Productions to Date

ICE has so far processed 64 pages of potentially responsive records, withholding 4 pages, producing 1 page in full, and producing 59 partially redacted pages.

ICE has also processed and produced three redacted spreadsheets relating to the canceled February 2021 charter flight.

ICE has further identified approximately 168 pages of potentially responsive documents from the Office of Public Affairs ("OPA") that have yet to be processed.

    (iii)    Future Searches and Productions

ICE is still in the process of collecting and searching the emails of Bryan Cox, then-ICE Press Secretary, as well as one of the attaches.

ICE is still in the process of gathering potentially responsive documents from LESA, Field Operations, Custody Management, and ORAP.

ICE proposes to process potentially responsive documents at a rate of up to 300 pages by the last day of every month (beginning May 31, 2022), as they are collected.

<u>Plaintiffs' Position</u>

Plaintiffs filed our FOIA requests with ICE on April 26, 2021. ICE did not acknowledge our requests until September 23, 2021. Having had a full year to conduct searches for records, far

beyond its obligations under the statute, ICE has only now begun to identify custodians, conduct searches and process records for the very limited time period specified in Plaintiffs' FOIA requests. Furthermore, the rate of 300 pages processed each month is far below what is standard for similar orders in SDNY. Plaintiffs propose that ICE produce – not process – 1000 pages to Plaintiffs each month beginning on May 9th 2022.

### Department of Homeland Security (DHS)

(i) Search Terms and Custodians

DHS has utilized the search terms proposed by Plaintiffs and applied these search terms to six custodians that Defendants initially identified. Plaintiffs have since identified six additional custodians, whose records DHS has agreed to search.

A separate search for policy documents identified no responsive policies in possession of DHS. Any responsive records will likely reside with ICE.[1]

A separate search for responsive data identified no responsive data in possession of DHS. Any responsive records will likely reside with ICE.

Plaintiffs' Position

Because ICE is a component of DHS, Plaintiffs assume DHS would have access, if not potentially possession, of responsive records and data, and so we do not necessarily understand DHS's assessment that it has "no" responsive policies or data in its possession. However, it is not in Plaintiffs' interest to receive duplicative records from DHS that we would also be receiving from ICE.

(ii) Searches and Productions to Date

DHS has already identified 445 pages of potentially responsive records. DHS may find additional records based on the search of the six additional custodians that Plaintiffs recently proposed.

(iii) Future Searches and Productions

DHS proposes to process the 445 pages it has already found and make two productions no later than May 31, 2022, and June 30, 2022. DHS proposes to process any additional records it finds based on searches of the six additional custodians on a rolling basis at the end of each month, beginning July 31, 2022.

Plaintiffs' Position

---

[11] As prescribed by regulation, DHS has a decentralized system to respond to FOIA requests. *See* 6 C.F.R. § 5.3(a)(1) ("DHS has a decentralized system for responding to FOIA requests, with each component designating a FOIA office to process records from that component. . . . To make a request for DHS records, a requester should write directly to the FOIA office of the component that maintains the records being sought."). Although ICE is a component of DHS, ICE maintains its own records, and FOIA requests for records maintained by ICE must be directed to ICE.

As Plaintiffs stated above, DHS has had more than enough time to engage in searches and process records responsive to Plaintiffs' requests. Plaintiffs propose DHS produce – not process – a minimum of 700 pages a month beginning on May 9, 2022.

**U.S. Citizenship and Immigration Services (USCIS)**

In response to the narrower requests directed at USCIS, USCIS (1) processed and produced with redactions 47 pages of records and (2) produced a spreadsheet of credible fear interviews overall and relating to Cameroonians during the relevant period. These productions were made on December 30, 2021.

Plaintiffs requested additional information from USCIS relating to credible fear interviews. After discussing with USCIS, Government counsel determined that Plaintiffs' additional request was outside the scope of the initial FOIA requests.

Plaintiffs' Position

Plaintiffs have engaged in good-faith discussions with the Government over the past four months regarding records requested from USCIS. Plaintiffs plan to file a new FOIA request in the coming month with USCIS regarding credible fear data related to Cameroonian migrants, and if necessary, litigate that request and relate it to this case.

**Executive Office for Immigration Review (EOIR)**

(i)     Search Terms and Custodians

EOIR has identified four custodians and completed searches of their emails using the terms "Cameroon" or "Cameroonian."

Separately, EOIR has conducted a search for Board of Immigration Appeals (BIA) decisions relating to Cameroonians in this period. EOIR has identified 162 relevant BIA decisions, of which 120 are summary decisions and 42 are remand decisions. EOIR and Plaintiffs have agreed that EOIR will produce a summary spreadsheet of the decisions and then process the remand decisions, which total approximately 180 pages.

(ii)    Searches and Productions to Date

In addition to identifying the relevant BIA decisions, EOIR completed searches of four custodians' emails. Those searches identified 63 emails that, with attachments, contain more than 11,000 pages. The parties have agreed that EOIR will process the emails themselves (i.e., excluding attachments), and that, within 30 days of EOIR's final production, Plaintiffs will have an opportunity to inform EOIR which, if any, of the email attachments Plaintiffs would like to have processed.

(iii)   Future Searches and Productions

EOIR proposes to produce the summary spreadsheet no later than April 30, 2022; to produce the BIA remand decisions by May 31, 2022; and then to process potentially responsive records, including the 63 emails mentioned above, at a rate of 300 pages per month starting June 30, 2022.

Plaintiffs' Position

With such a relatively small number of emails, Plaintiffs propose that EOIR produces the 63 emails in full to Plaintiffs without attachments, including subject lines as well as the names of the attachments and the non-exempt portions of the emails, senders, and recipients, to give us a full context of what the attachments might be. After review, Plaintiffs will report back to EOIR which attachments we seek to have EOIR process. Once Plaintiffs review which email attachments EOIR would process, Plaintiffs propose a production schedule of 1000 pages produced by EOIR a month beginning June 6, 2022.

**Department of State (State Department)**

(i)   Search Terms and Custodians

The State Department has identified three Bureaus that are potentially relevant to the FOIA requests at issue: the Bureau of African Affairs, the Bureau of Consular Affairs, and the Bureau of Population, Refugees, and Migration. The State Department has tasked each of these Bureaus with searching for potentially responsive data and policies.

The State Department has agreed to the following:

   a. Subpart 1 of FOIA Request F-2021-05632 has been narrowed to clarify that Plaintiffs seek, for each FOIA request submitted to the Department between August 1, 2020 and January 19, 2021 pertaining to the removal of Cameroonians, the name of each FOIA requester and the date of their FOIA request.

   b. For subpart 2 of Plaintiffs' FOIA Request F-2021-05632 and subparts 1 and 2 of FOIA Request F-2021-05639, the Department will conduct searches for potentially responsive email communications sent or received between August 1, 2020 and February 26, 2021 by personnel from the Bureau of African Affairs, the Bureau of Consular Affairs, and the Bureau of Population, Refugees, and Migration. The Department's searches will use a set of search terms agreed-to between the parties, detailed in Appendix A.

   c. Subparts 3-6 and 9 of Plaintiffs' FOIA Request F-2021-05632 have been referred to other government agencies. The State Department will therefore not be obligated to conduct searches or provide response to those requests.

   d. Subparts 7-8 and 10-12 of FOIA Request F-2021-05632 have been narrowed to clarify that Plaintiffs seek only State Department policy or guidance documents in force during the time period from August 1, 2020 to January 19, 2021. Additionally, subparts 7 and 8 have been narrowed to clarify that

Plaintiffs seek only policy or guidance documents relevant to those requests that relate to Haiti, Cameroon, the Democratic Republic of the Congo, or Angola. Finally, subpart 12 has been narrowed to clarify that Plaintiffs seek only State Department policy or guidance documents relevant to that request that relate to Cameroon.

(ii)     Searches and Productions to Date

As of the morning of April 18, 2022, and despite good faith negotiations, the parties have yet to finalize an agreement on the scope of the State Department's searches. Although the parties have made significant progress, including an agreement on search terms to be applied to the State Department's email searches, there remains one outstanding issue that is the subject of ongoing consultations between the parties—namely, the scope of searches of State Department cables. The search terms listed in Appendix A produced an unreasonably high number of cables (nearly 6,000), and the parties are in the process of determining whether they can agree on a narrower set of search terms for State Department cables. The State Department plans to continue conferring with plaintiffs and will complete its searches and begin processing the potentially responsive records returned by those searches as soon as the parties' consultations conclude.

(iii)    Future Searches and Productions

The State Department proposes to process potentially responsive records on a rolling basis, endeavoring in good faith to process an average of 450 pages every six weeks. The State Department further proposes making its first production of responsive, non-exempt records six weeks after the parties' narrowing negotiations conclude.

The State Department cannot agree to produce, as opposed to process,[2] a set number of pages every month because the proportion of responsive records returned by the State Department's searches is unpredictable. Simply put, there is no reliable way to predict the ratio of processed pages to produced pages that the State Department will encounter in any given month, and requiring the State Department to produce 700 pages per month, as plaintiffs propose, could in practice require the State Department to process several thousand pages per month. Given the extensive process required to process agency records, the ongoing impact of the COVID-19 pandemic on the State Department's processing capabilities, and the large burden currently faced by the State Department's FOIA program, the State Department proposes in good faith to process an average of 450 pages every six weeks (or 300 pages per month) in this litigation. Granting Plaintiffs' proposed production rate would risk exacerbating the State Department's processing burden and monopolizing the State Department's limited FOIA resources at the expense of the many thousands of FOIA requests that were submitted prior to Plaintiffs'.

---

[2]   The "processing" of records refers to the entire process during which the State Department reviews records for responsiveness, assesses whether any redactions are required, applies any such redactions, obtains necessary internal and external clearances, and releases the non-exempt portions of any responsive documents to the requester. Thus, not all records that are "processed" pursuant to the FOIA are "produced" to requester, as some records are determined to be non-responsive, including duplicate copies of records identified during review, and some records are withheld in full under one or more of the FOIA exemptions.

The State Department would be willing to provide the Court with additional briefing in support of its proposed processing rate upon request.

<u>Plaintiffs' Position</u>

Plaintiffs reiterate our position that the State Department has had a full year to initiate searches and begin processing records responsive to our FOIA requests. Plaintiffs propose the State Department producing – not processing – a minimum of 700 pages every month beginning on May 9, 2022.

We thank the Court for its consideration.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By:   /s/
LUCAS ISSACHAROFF
ILAN STEIN
Assistant United States Attorneys
Telephone 212-637-2737/2525
Facsimile  212-637-2702
E-mail:   lucas.issacharoff@usdoj.gov
              ilan.stein@usdoj.gov

cc:   Counsel of Record
      *By ECF*

APPENDIX A

- ("Cameroon remove"~5) OR ("Cameroon removal"~5) OR ("Cameroonian remove"~5) OR ("Cameroonian removal"~5)
- ("Cameroon repatriation"~5) OR ("Cameroonian repatriation"~5) OR ("Cameroon repatriate"~5) OR ("Cameroonian repatriate"~5) OR ("Cameroon repatriating"~5) OR ("Cameroonian repatriating"~5)
- ("Cameroon manifest"~5) OR ("Cameroonian manifest"~5)
- ("Cameroon Omni"~5) OR ("Cameroonian Omni"~5)
- ("Cameroon illegal"~5) OR ("Cameroon illegals"~5) OR ("Cameroonian illegal"~5) OR ("Cameroonian illegals"~5)
- ("Cameroon alien"~5) OR ("Cameroon aliens"~5) OR ("Cameroonian alien"~5) OR ("Cameroonian aliens"~5)
- "N225AX" OR "N207XA" OR "ET 501" OR "ET 905"