

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*86 Chambers Street*
*New York, New York 10007*

June 27, 2022

By ECF
The Honorable Barbara C. Moses
United States Magistrate Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

    Re:   *Project South et al. v. United States Immigration and Customs Enforcement et al.*,
              21 Civ. 8440 (ALC) (BCM)

Dear Judge Moses:

    This Office represents U.S. Immigration and Customs Enforcement, the U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, the U.S. Department of Justice Executive Office for Immigration Review, and the U.S. Department of State (collectively, the "Government"), the defendants in the above-referenced case filed under the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552 *et seq*. I write on behalf of both parties to provide a status update pursuant to the Court's April 25, 2022 Order (ECF No. 41).

    By way of background, Plaintiffs Project South and the Center for Constitutional Rights filed this action to compel the release of agency records in connection with three FOIA requests to Defendants in April and June of 2021, seeking records concerning removals of Cameroonians from the United States in late 2020 and early 2021. The FOIA requests focus on (1) data regarding the demographic information of persons on deportation flights to Cameroon between August 2020 and January 20, 2021, (2) agency policies regarding deportation of Cameroonians and other migrants to areas of potential or known conflict, and (3) correspondence and communications among relevant government officials regarding removals of Cameroonians and conditions in Cameroon between August 1, 2020, and February 26, 2021.

### United States Immigration and Customs Enforcement (ICE)

Defendants' Position

    Plaintiffs and ICE have reached agreement on search terms and custodians for the collection of electronic records.

    ICE's searches are largely complete, although some subcomponents are still searching for responsive policy documents.

    ICE has processed 1,133 pages of records and produced in full or in part 621 responsive pages in three productions on March 22, May 23, and June 17, 2022.

From the existing searches ICE has roughly 3,300 pages left to process. ICE does not anticipate that it will be able to complete processing in time for the current deadline for summary judgment motions in October, should those motions prove necessary.

Plaintiffs' Position[1]

Since the court conference on April 25, 2022, ICE has produced only 685 pages to Plaintiffs; of which more than half were produced only ten days before the date of this letter. As we stated in our April 17, 2022 letter to the Court, Plaintiffs' position remains unchanged: the agency's rate of 300 pages processed each month is far below what is standard for similar orders in SDNY. Plaintiffs ask that the Court order ICE to produce – not process – a minimum of 1,100 pages to Plaintiffs in July, August and September. We note this number would have been smaller had ICE processed and produced more pages in April, May and June. Additionally, ICE has not yet produced any data requested by Plaintiffs, and discussed by the parties during the April 25, 2022, court conference (See April 25, 2022 transcript at 10-11).

Furthermore, after reviewing ICE's May 24, 2022 production, several emails contain large redactions that seem unnecessary under b5. For instance, the following Bates numbers are listed as "cleared": 287 (re: moving Cameroonians to Texas); 310-11 (re: Der Spiegel request); 271, 277, 316, and 365 (re: torture allegations at Winn County Correctional); 267 (re: civil rights complaint). There are also occasions in which a final press statement is issued to a reporter, and the government then redacts subsequent messages in the same email chain (Bates 375 and 382). The deliberative process privilege under exemption 5 must be "narrowly construed." *FBI v. Abramson*, 456 U.S. 615, 630 (1982). What's more, the government bears the burden of proving the exemption. *Wilner v. National Sec. Agency*, 592 F.3d 60, 69 (2d Cir. 2009) ("The agency asserting the exemption bears the burden of proof, and all doubts as to the applicability of the exemption must be resolved in favor of disclosure"). In addition to heavily redacting press releases, the government has also claimed (b)(5) privilege for redactions of background information and responses to clearly factual inquiries. As the Second Circuit has repeatedly made clear, the deliberative process privilege does not cover "'purely factual' material." Plaintiffs have requested that ICE re-produce these documents without these redactions, and that future productions do not contain similar unnecessary redactions.

**Department of Homeland Security (DHS)**

Defendants' Position

DHS has utilized the search terms proposed by Plaintiffs and applied these search terms to six custodians that Defendants initially identified, as well as six additional custodians proposed by Plaintiffs.

---

[1] Underlying all of Plaintiffs' positions outlined in this status update is the ongoing urgency for the records sought in our FOIA request and litigation. On April 15, 2022, the U.S. government granted Cameroonians in the United States Temporary Protected Status, recognizing the ongoing armed conflict in Cameroon. This TPS designation reinforces the need to investigate decision-making practices that resulted in sending vulnerable populations back to danger and has sparked interest by media, activists, and government agencies—including ongoing investigations and interest by the Office for Civil Rights and Civil Liberties (CRCL). There is also an ongoing campaign to ensure humanitarian parole for Cameroonians deported on death flights. Therefore, the information in this litigation is important to current public efforts requiring timely and efficient responses to the requests for information.

A separate search for policy documents identified no responsive policies in possession of DHS. Any responsive records will likely reside with ICE.[2] A separate search for responsive data identified no responsive data in possession of DHS. Any responsive records will likely reside with ICE.

Since the last court conference, DHS has made two productions of documents. The first was made on June 3, consisting of 131 pages, of which 56 were released in full, 26 were partially withheld, and 49 were withheld in full pursuant to FOIA exemptions (b)(5) and (b)(6). DHS processed 328 pages of potentially responsive records in connection with this production.

The second was made on June 24, consisting of 105 pages of records, of which six pages were released in full, 30 pages were partially withheld, and 69 pages were withheld in full pursuant to FOIA exceptions (b)(5) and (b)(6). DHS processed 333 pages of potentially responsive records in connection with this production.

DHS anticipates making one final production.

Plaintiffs' Position

Despite having identified 445 pages to be processed in early April, and then identifying an additional "approximately 190 pages" on April 25, 2022, after Plaintiffs suggested six additional custodians (See Transcript at 6), Defendant DHS has yet to process and produce the entirety of this small set of previously identified records to Plaintiffs. We ask the Court to order DHS to process and produce all remaining responsive records its searches have uncovered up to this point by July 1, 2022.

Regarding policy documents, as Plaintiffs have previously stated, because ICE is a component of DHS, Plaintiffs assume DHS would have access, if not potentially possession, of responsive records, and so we do not necessarily understand DHS's assessment that it has no responsive policies in its possession. However, it is not in Plaintiffs' interest to receive duplicative records from DHS that we would also be receiving from ICE.

**U.S. Citizenship and Immigration Services (USCIS)**

Defendants' Position

USCIS has completed its production in response to the initial FOIA request and Plaintiffs have agreed to submit a new FOIA request for any additional records they may seek.

Plaintiffs' Position

---

[2] As prescribed by regulation, DHS has a decentralized system to respond to FOIA requests. *See* 6 C.F.R. § 5.3(a)(1) ("DHS has a decentralized system for responding to FOIA requests, with each component designating a FOIA office to process records from that component. . . . To make a request for DHS records, a requester should write directly to the FOIA office of the component that maintains the records being sought."). Although ICE is a component of DHS, ICE maintains its own records, and FOIA requests for records maintained by ICE must be directed to ICE.

Plaintiffs filed their new FOIA request with USCIS on June 24, 2022. As stated in the April 17, 2022 status update to the Court, depending on the results of this request, we may choose to litigate and relate to this case.

### **Executive Office for Immigration Review (EOIR)**

Defendants' Position

Pursuant to the parties' agreement, EOIR has processed and produced (1) emails from agreed-upon custodians, (2) a list of relevant BIA decisions, and (3) remand BIA decisions from that list.

Pursuant to the parties' agreement, Plaintiffs have reserved the right to seek processing of attachments from the produced emails, and are in the process of reviewing the produced emails.

Plaintiffs' Position

While the parties did come to an agreement before the April 25th court conference that EOIR would produce (1) emails (2) the list of BIA decisions and (3) remand BIA decisions from that list, it took EOIR almost two months (June 21, 2022) to produce all of these records. Furthermore, as previously identified to the Court on April 25th as "quite manageable," there were only 63 emails (280 pages total) which Plaintiffs are currently reviewing in order to decide which, if any, attachments Plaintiffs would like produced. When Plaintiffs inquired on May 16th why it would take so long for EOIR to produce the already-identified emails, we were told that EOIR was simply too busy. Despite this, because of the continued urgency of our litigation, Plaintiffs will review the emails and identify which attachments we wish to be produced by July 5, 2022.

### **Department of State (State Department)**

Defendants' Position

The parties' previous letter to the Court, dated April 18, 2022, reported that Plaintiffs and the State Department had preliminarily agreed to a set of search terms. However, upon additional review, the State Department determined that the keyword search terms proposed by Plaintiffs and reflected in Appendix A of the April 18 letter were unreasonably broad and resulted in a high volume of non-responsive results.[3] After further good faith negotiations with Plaintiffs, the State Department developed and has since applied a slightly modified version of the search terms. Plaintiffs have reserved the right to challenge the adequacy of the State Department's search in this regard.

The State Department has conducted searches in response to Plaintiffs' requests, but certain of its searches remain outstanding. The Department has nonetheless started processing the universe of potentially responsive records returned by its searches thus far, and made an

---

[3] Plaintiffs state below that, at the April 25 conference, the undersigned represented that the State Department had identified approximately 2,000 pages of emails and cables. That representation was erroneous, due entirely to the undersigned's oversight: As of April 25, the State Department had identified approximately 2,000 *documents*, not 2,000 pages. The Government informed counsel on April 27 that the total number of *pages* was approximately 17,500.

initial production of responsive, non-exempt material on June 15, 2022.  The Department's June 15 letter indicated that it had processed more than 450 pages of potentially responsive material and had located five responsive records, all of which were released in part.

The State Department will continue its searches while simultaneously processing the potentially responsive records returned by those searches and anticipates making its next release on or before July 27, 2022.

The State Department does not anticipate that it will be able to complete processing in time for summary judgment motions to be filed in October should they prove necessary.

Plaintiffs' Position

At the April 25th conference with the Court, the Government represented that, after an incorrectly run search, the Department of State had approximately 2,000 *pages* of emails and cables to produce to Plaintiffs, along with searches for policy documents and other records that had not yet been completed. However, shortly after, Plaintiffs were informed that the total was actually 17,500 pages, and Defendants asked Plaintiffs to further narrow the search. Plaintiffs reiterate that a year after the filing of our FOIA requests to State, the agency's inability to provide accurate numbers of records, as well as its demands that we continue to narrow a request we already feel is sufficiently specific and narrow is frustrating; however, Plaintiffs engaged in good faith efforts to provide narrower search terms to State. That being said, we request the Court order the State Department to process and produce all responsive records on a monthly basis through September 2022, in order for potential summary judgment briefing to begin in October 2022.

We thank the Court for its consideration.

                Respectfully submitted,

                DAMIAN WILLIAMS
                United States Attorney for the
                Southern District of New York

By:   /s/
      LUCAS ISSACHAROFF
      ILAN STEIN
      Assistant United States Attorneys
      Telephone 212-637-2737/2525
      Facsimile   212-637-2702
      E-mail:   lucas.issacharoff@usdoj.gov
                    ilan.stein@usdoj.gov

cc:    Counsel of Record
        *By ECF*