**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **PROJECT SOUTH, and THE CENTER FOR CONSTITUTIONAL RIGHTS,** | |
| *Plaintiffs,* | **1:21-cv-08440 (ALC) (BCM)** |
| -against- | |
| **UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,** | <u>**OPINION**</u> |
| *Defendants.* | |

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiffs Project South and the Center for Constitutional Rights filed this action under

the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), seeking several categories of

documents from Defendants United States Immigration and Customs Enforcement ("ICE"),

United States Department of Homeland Security ("DHS"), United States Citizenship and

Immigration Services ("USCIS"), United States Department of Justice Executive Office for

Immigration Review ("EOIR"), and United States Department of State ("State") (collectively

"Defendants"). Specifically, Plaintiffs filed two FOIA requests (the "Request") seeking records

relating to the detention and deportation of Cameroonian migrants from late 2020 to early 2021.

ECF No. 1. The parties' cross-motions for partial summary judgment are now pending before the

Court. This Opinion and Order addresses Plaintiffs' challenges to the searches and withholding

determinations conducted by ICE, DHS, and State. Plaintiffs do not challenge any of EOIR or

USCIS's searches or withholdings.

FOIA actions are typically resolved by summary judgment. *Families for Freedom v. U.S.*

*Customs and Border Protection,* 797 F. Supp. 2d 375, 385 (S.D.N.Y. 2011). When parties cross-

move for summary judgment, a court analyzes the motions separately, "in each case construing

the evidence in the light most favorable to the non-moving party." *Wandering Dago, Inc. v.*

*Destito*, 879 F.3d 20, 30 (2d Cir. 2018) (quoting *Novella v. Westchester Cty.*, 661 F.3d 128, 139 (2d Cir. 2011)). "[A] district court must review *de novo* an agency's determination to withhold information requested under FOIA." *Florez v. Cent. Intel. Agency*, 829 F.3d 178, 182 (2d Cir. 2016).

Having carefully considered the parties' submissions, regarding the adequacy of searched conducted by Defendants, the Court concludes that State proved that it conducted an adequate search, and ICE and DHS failed to prove as a matter of law that they conducted an adequate search. ICE and Plaintiffs The parties should meet and confer regarding a search of (1) the Office of the Principal Legal Advisor ("OPLA"), (2) ICE Attaché for Cameroon, and (3) Enforcement and Removal Operations's ("ERO") Removal Division of special high risk charter flights ("SHRC"), and submit a joint status report regarding the proposed search and search terms within twenty-one days of this Order. DHS and Plaintiffs should meet and confer regarding a search of the Office of International Affairs in the Office of Strategy, Policy, and Plans ("PLCY") custodians, and submit a joint status report regarding the proposed search and search terms within twenty-one days of this Order.

The Court also finds that ICE properly withheld documents pursuant to Exemption 5, 6, and 7(e); State did not properly withhold documents pursuant to Exemptions 3 and 5. State is directed to submit the records withheld under Exemption 5 to the Court for *in camera* inspection.

# BACKGROUND

## I.     Statement of Facts

Between August 2020 and February 2021, the Trump and Biden Administrations deported, or planned to deport, nearly two hundred Cameroonian asylum seekers.[1] There were reports of cruel or inhuman treatment,[2] and allegations that migrants were coerced into signing removal papers.[3]

## II.     Plaintiffs' Requests

Plaintiffs submitted two "FOIA" requests on April 26, 2021, seeking records related to removals of Cameroonian and other African migrants in 2020 and early 2021, including related policy, data, and communications records. The first FOIA request, the "Data Request," sought data on Cameroonian migrants whom the U.S. government deported, or sought to deport, and policy records—guidance, formal or informal memos, or other types of planning documents— informing how ICE, DHS and State carried out these removals. ECF No. 63-2 at 2-14. The second request, the "Communications Request," sought communications related to the removal flights, including communications between key individuals who were involved, such as former ICE Press Secretary Bryan Cox and Honorary Consul of Cameroon Charles Greene. *Id.* at 15-21. The requests sought information from August 1, 2020 to February 26, 2021. *Id.* at 3-16.[4] The parties negotiated the scope of the requests.

---

[1] ECF No. 67 at 6 n.5 (citing *US: Deported Cameroonian Asylum Seekers Suffer Serious Harm*, Human Rights Watch (Feb. 10, 2022), https://www.hrw.org/news/2022/02/10/us-deported-cameroonian-asylum-seekers-suffer-serious-harm).

[2] *Id.*

[3] ECF No. 67 at 6 n.5 (citing Julia Ainsley, *Cameroonian asylum seekers pulled off deportation plane amid allegations of ICE abuse*, NBC NEWS (Oct. 14, 2020), https://www.nbcnews.com/politics/immigration/cameroonian-asylum-seekers-pulleddeportation-plane-amid-allegations-ice-abuse-n1243468).

[4] Plaintiffs submitted a third request, the "Credible Fear Request," to USCIS on June 17, 2021, seeking data relating to credible fear interviews. ECF No. 1-1, Exhibit 1 to the Complaint at pp. 22-27. USCIS produced the data requested in the Credible Fear Request, and Plaintiffs do not challenge that search or production.

### III.    Defendants' Responses

The Defendant agencies conducted searches and produced responsive records. Plaintiffs do not challenge any of EOIR or USCIS's searches or withholdings. Between April 2022 and May 2023, ICE produced 1,757 pages of records, Defendant DHS produced 374 pages of records, and Defendant State produced 443 pages of records. ICE also produced seven native format spreadsheets.

**ICE:** ICE determined that the Office of Public Affairs ("OPA"), ERO, Homeland Security Investigations ("HSI"), and the Office of Regulatory Affairs and Policy ("ORAP") were most likely to have records responsive to the Data Request, and instructed the program offices to conduct a records search. ECF No. 63, Declaration of Fernando Pineiro ("Pineiro Decl.") ¶ 20. HSI, based upon its responsibilities and the subject matter of the requests, determined that it would not have responsive documents. *Id.* ¶¶ 43-44.

In total, 2,393 pages of potentially responsive records and three spreadsheets were identified by ERO and sent to the ICE FOIA Office for review and processing. *Id.* ¶ 39. ORAP identified 121 pages of potentially responsive records and sent them to the ICE FOIA Office for review and processing. *Id.* ¶ 42. OPA first conducted a search of their shared drive database and identified 168 pages of potentially responsive records, which were sent to the ICE FOIA Office for review and processing. *Id.* ¶ 46. In total, OPA found 1,827 pages of potentially responsive records in Mr. Cox's emails, which were sent to the ICE FOIA Office for review and processing. *Id.* ¶ 48. In total, ICE identified 4,509 pages and 3 spreadsheets of records potentially responsive to the Requests. *Id.* ¶¶ 39, 42, 46, 48. ICE ultimately produced 1,761 pages and 3 spreadsheets of responsive records, subject to withholdings under FOIA Exemptions 3, 5, 6, 7(C), and 7(E). *Id.* ¶¶ 51-52.

ICE produced an initial *Vaughn* index to Plaintiffs on March 28, 2023, explaining the bases for the withholdings. On April 27, 2023, Plaintiffs identified the withholdings that they intended to challenge. Attached as Exhibit A to the Pineiro Declaration is the final *Vaughn* index identifying the bases for the challenged withholdings under Exemptions 3, 5, 6, 7(C), and 7(E). ECF No. 63-1, Pineiro Decl., Ex. A ("ICE *Vaughn* Index").

**DHS:** In response to the Data Request, DHS determined that it did not maintain databases likely to have information responsive to the request. ECF No. 64, Declaration of Catrina M. Pavlik-Keenan ("Pavlik-Keenan Decl.") ¶ 9. DHS determined that the Office of General Counsel ("DHS OGC") and the PLCY were the components most likely to have policy documents responsive to the Data Request. *Id.* ¶ 10. The PLCY directed custodians in its Office of International Affairs including the Director for the Middle East, Africa, and Southwest Asia and the PLCY Executive Secretary, to manually search any applicable computer files, hard copy work folders, or email systems for records potentially responsive to the request. *Id.* The PLCY located 6 pages of potentially responsive records, which were determined to be either non-responsive, duplicative of previously produced pages, or publicly available. *Id.*

In response to the Communications Request, the parties agreed on twelve potentially relevant custodians. *Id.* ¶ 12. Searches of these custodians identified 661 pages of records potentially responsive to the Communications Request. *Id.* DHS ultimately produced 62 pages of responsive records in whole and withheld 56 pages in part and 118 pages in full pursuant to FOIA Exemptions 5 and 6. *Id.* ¶ 13.

DHS produced an initial *Vaughn* index to Plaintiffs on March 15, 2023. On April 18, 2023, Plaintiffs identified the withholdings that they intended to challenge.[5] Attached as Exhibit

---

[5] One of those withholdings was a draft letter. Plaintiffs withdrew that challenge when the Government released the final letter.

A to the Pavlik-Keenan Declaration is a final *Vaughn* index identifying the bases for the remaining challenged withholdings under Exemption 6. ECF No. 64-1, Pavlik-Keenan Decl. Ex. A ("DHS *Vaughn* Index").

**State:** State searched the shared files of the U.S. Embassy in Cameroon for documents relating to ICE, removal, or deportation, and identified several relevant embassy officials and directed them search their own emails. ECF No. 65, Declaration of Susan C. Weetman ("Weetman Decl.") ¶¶ 15-20. State ultimately retrieved 476 pages of potentially responsive records, released 65 in full and withheld 349 in part and 7 in full under FOIA Exemptions 5, 6, and 7(c). *Id.* ¶ 37.

State produced an initial *Vaughn* index to Plaintiffs on March 15, 2023. On April 14, 2023, Plaintiffs identified the withholdings that they intended to challenge. Attached as Exhibit A to the Weetman Declaration is a final *Vaughn* index identifying the bases for the challenged withholdings under Exemptions 5, 6, and 7(C). ECF No. 65-1, Weetman Decl. Ex. A ("State *Vaughn* Index").

### IV.    Procedural Background

On May 26, 2023, Defendants moved for summary judgment. ECF No. 61. On June 23, 2023, Plaintiffs filed a cross-motion for summary judgment and opposition to Defendants' motion. ECF No. 66. On July 14, 2023, Defendants filed their reply and opposition to Plaintiffs' cross-motion. ECF No. 71. On July 28, 2023, Plaintiffs filed their reply and opposition to Defendants' motion. ECF No. 76.

## STANDARD OF REVIEW

### I.        Summary Judgment

Summary judgment is the usual mechanism for resolving a FOIA action. *Families for Freedom,* 797 F. Supp. 2d at 385. Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). There is no issue of material fact where the facts are irrelevant to the disposition of the matter. *Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*, 967 F.Supp.2d 756, 761 (S.D.N.Y. 2013); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. Where parties file cross-motions for summary judgment, "'each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration.'" *N.Y. Times Co. v. U.S. Dep't of Def.*, 499 F.Supp.2d 501, 509 (S.D.N.Y. 2007) (citing *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)).

### II.        FOIA

A federal agency responding to a FOIA request must (1) conduct an adequate search using reasonable efforts, (2) provide the information requested, unless it falls within a FOIA Exemption, and (3) provide any information that can be reasonably segregated from the exempt information. *DiGirolamo v. U.S. Drug Enf't Admin.*, No. 1:15-CV-5737, 2017 WL 4382097, at *3 (S.D.N.Y. Sept. 29, 2017) (citations omitted). *See also Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994) (citing 5 U.S.C. § 552(a)(4)(B) and *EPA v. Mink*, 410 U.S. 73, 93 (1973)). Affidavits or declarations providing "reasonably detailed explanations why any

withheld documents fall within an exemption are sufficient to sustain the agency's burden" and are "accorded a presumption of good faith." *Id.* (citing *Safecard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).

Furthermore, in the national security context, courts "'must accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record.'" *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 681 F.3d 61, 69 (2d Cir. 2012) (citing *Wolf v. Cent. Intel. Agency*, 473 F.3d 370, 374 (D.C. Cir. 2007)). Agency affidavits, however, must describe with reasonable specificity the nature of the documents at issue and the justification for nondisclosure—conclusory assertions are insufficient. *Bloomberg L.P. v. Bd. of Governors of Fed. Reserve Sys.*, 649 F. Supp. 2d 262, 271 (S.D.N.Y. 2009) (citing *Halpern v. F.B.I.*, 181 F.3d 279, 291 (2d Cir. 1999)).

In sum, courts may award summary judgment on the basis of agency affidavits that "[1] describe the justifications for nondisclosure with reasonably specific detail, [2] demonstrate that the information withheld logically falls within the claimed exemption, and [3] are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 73 (2d Cir. 2009). Conversely, "[s]ummary judgment in favor of the FOIA plaintiff is appropriate when an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption." *N.Y. Times Co. v. U.S. Dep't of Justice*, No. 14CIV03776ATSN, 2016 WL 5946711, at *5 (S.D.N.Y. Aug. 18, 2016) (citing *Bloomberg*, 649 F.Supp.2d at 271).

**DISCUSSION**

I.    **Search Adequacy**

    A.  **Legal Standard**

Agencies should approach a FOIA request not "as a private litigant might approach a document request," but instead "in a capacious manner befitting an agency of the United States government charged with the statutory responsibility to produce for public consumption the greatest number of records that fall within the FOIA request[.]" *Austin Sanctuary Network v. U.S. Dep't of Homeland Sec.*, No. 20-cv-1686, 2022 WL 4356732, *8 (S.D.N.Y. Sept. 19, 2022). An agency bears the burden to "show beyond material doubt that it has conducted a search reasonably calculated to uncover all relevant documents." *Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enf't Agency*, 877 F. Supp. 2d 87, 95 (S.D.N.Y. 2012) (citation omitted); *see also Carney*, 19 F.3d at 812 (burden of establishing the adequacy of a search is on the agency). To demonstrate search adequacy, an agency must submit "relatively detailed and nonconclusory" affidavits. *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 488–89 (2d Cir. 1999) (citation omitted); *see also Gonzalez v. U.S. Citizenship & Immigr. Servs.*, 475 F. Supp. 3d 334, 347 (S.D.N.Y. 2020) ("The reasonableness of a search may be established solely on the basis of the Government's relatively detailed, non-conclusory affidavits that are submitted in good faith."). "[A]n agency affidavit or declaration must describe in reasonable detail the scope of the search and the search terms or methods employed." *Gelb v. Fed. Reserve Bank of N.Y.*, No. 1:12-cv-4880-ALC, 2014 WL 4402205, at *4 (S.D.N.Y. Sept. 5, 2014) (quoting *Davis v. U.S. Dep't of Homeland Sec.*, No. 11-cv-203-ARR-VMS, 2013 WL 3288418, at *6 (E.D.N.Y. June 27, 2013)); *see also Garcia v. U.S. Dep't of Just. Office of Info. & Privacy*, 181 F. Supp. 2d 356, 366 (S.D.N.Y. 2002) (citation omitted) (ruling that agencies must prove their searches were

adequate by showing "a good faith effort to search for the requested documents, using methods 'reasonably calculated' to produce documents responsive to the FOIA request."). Summary judgment for an agency will not be granted "where the agency's response raises serious doubts as to the completeness of the agency's search, where the agency's response is patently incomplete, or where the agency's response is for some other reason unsatisfactory." *Nat'l Day Laborer Org. Network*, 877 F.Supp.2d at 96 (internal citation omitted).

Applying this reasonableness standard, courts consider: 1) the search terms and the type of search performed; 2) the nature of the records system or database searched; and 3) whether the search was "logically organized." *Schwartz v. U.S. Dept. of Def.*, No. 15-CV-7077 (ARR) (RLM), 2017 WL 78482, at *6 (E.D.N.Y. Jan. 6, 2017); *NAACP Legal Def. & Educ. Fund, Inc. v. U.S. Dep't of Just.*, 463 F. Supp. 3d 474, 484 (S.D.N.Y. 2020).

"In general, a FOIA petitioner cannot dictate the search terms for his or her FOIA request." *Immigrant Def. Project v. U.S. Immigr. & Customs Enf't*, 208 F. Supp. 3d 520, 531–32 (S.D.N.Y. 2016). An agency must "craft the search terms that they believe to be reasonably tailored to uncover documents responsive to a FOIA request." *Brennan Ctr. for Just. at N.Y. Univ. Sch. of L. v. U.S. Dep't of Just.*, 377 F. Supp. 3d 428, 434 (S.D.N.Y. 2019), *reconsideration denied*, No. 17 Civ. 6335, 2019 WL 2717168 (S.D.N.Y. June 28, 2019). The agency must provide "'logical explanations for each of the decisions it made as to search terms to be used and how to conduct the searches,' evincing a good faith effort to design a comprehensive search." *Immigrant Def. Project*, 208 F. Supp. 3d at 527–28 (quoting *Fox News Network, LLC v. U.S. Dep't of Treasury*, 739 F. Supp. 2d 515, 535 (S.D.N.Y. 2010)). "[A]n agency's choice of search terms is not conclusive," and "[w]here challenged, agencies have to explain why certain search terms, clearly relevant, were not used." *Brennan Ctr.*, 377 F. Supp. 3d

at 434; *see also Immigrant Def. Project*, 208 F. Supp. 3d at 528 ("Courts in this District have found that agencies fulfilled their obligation under FOIA even where the agency failed to search certain terms listed in the FOIA request or emphasized by a plaintiff, so long as the agency provided an explanation as to why the search term was not used."). "There is no requirement that an agency use identical search terms in all of its offices." *Fox News*, 739 F. Supp. 2d at 534.

Agency searches need not be perfect. *Conti v. U.S. Dep't of Homeland Sec.*, 2014 WL 1274517, at *11 (S.D.N.Y. Mar. 24, 2014). "[A]n agency 'is not expected to take extraordinary measures to find the requested records, but only to conduct a search reasonably designed to identify and locate responsive documents.'" *Id.* (citing *Adamowicz v. I.R.S.*, 672 F. Supp. 2d 454, 462 (S.D.N.Y. 2009), *aff'd*, 402 F. App'x 648 (2d Cir. 2010)). Speculation that other documents exist, without more, "does not undermine [a] finding that the agency conducted a reasonable search." *Conti*, 2014 WL 1274517, at *11 (quoting *Garcia*, 181 F. Supp. 2d at 366). A "disparity between the search terms used by various sections also indicates that the search was inadequate where some divisions failed to use what other divisions deemed clearly relevant search terms." *Brennan Ctr. for Just. at N.Y. Univ. Sch. of L. v. U.S. Immigration & Customs Enf't*, 571 F.Supp.3d 237, 246 (S.D.N.Y. 2021); *see also Austin Sanctuary Network*, 2022 WL 4356732, at *12.

## B.  Application: ICE's Search

ICE contends it identified four components within the agency likely to have records responsive to Plaintiff's FOIA request – OPA, ERO, HIS, and ORAP – because those components relate to the crux of Plaintiffs' FOIA requests: records related to Cameroonian removals. Pineiro Decl. ¶ 20. ICE instructed these program offices to conduct a search for records. *Id.* HIS determined that it would not have responsive documents. *Id.* ¶¶ 43-44. OPLA

was "tasked with" responding to Plaintiffs' communications request. *Id.* at ¶ 9. ERO's

Information Disclosure Unit identified units most likely to have responsive records: Enforcement

Division, Removals Division, Custody Management Division, Law Enforcement System

Analysis Division, ERO Field Operations Division, and the Non-Detained Management

Division. *Id.* ¶ 24. However, the Enforcement Division, the Custody Management Division,

Field Operations Division, and Non-Detained Management Division determined that they would

not have information responsive to the Data Request. *Id.* ¶¶ 27-28, 35, 37-38. ICE searched

databases, shared drives, and emails either manually or with various search terms. *Id.* ¶¶ 23-25,

30-34, 36, 40, 46-48. OPLA searched for communications responsive to the Communications

Request, but did not identify any responsive records. ECF No. 72, Supplemental Declaration of

Fernando Pineiro ("Supp. Pineiro Decl.") at ¶ 8.

       ICE believes these facts entitle it to summary judgment since it reasonably identified

multiple offices within the agency likely to possess responsive records, reasonably calculated

searches of those offices' electronic files to discover responsive records and located 4,509 pages

and 3 spreadsheets of records responsive to the Request. *Id.* ¶¶ 39, 42, 46, 48. Plaintiffs argue

that they requested that their FOIA requests be directed to "ICE's New Orleans and Atlanta Field

Offices," ECF No. 63-2 at 3, 16, but these field offices were not searched, nor was the Field

Operations Division within which the individual field offices are housed. Both FOIA requests

also requested that ICE Air Operations, a division of ICE ERO, search for responsive material,

*Id.*. ICE conducted a limited search of ICE Air Operations, Pineiro Decl. ¶ 30. Defendants

respond that ERO and the Removal Division as a whole searched for documents, including a

search of ICE Air Operations Removals. Pineiro Decl. ¶¶ 29-34. ICE also searched the Law

Enforcement System Analysis Division (LESA), which maintains information on the Atlanta and New Orleans field offices. Supp. Pineiro Decl. ¶ 6.

"Because the agencies are more familiar with their work than the plaintiffs or the Court, they are entitled to some degree of deference regarding their determination of search locations." *Nat'l Day Laborer Org. Network*, 877 F. Supp. 2d at 101. *See also Freedom of Press Found. v. U.S. Dep't of Just.*, 493 F. Supp. 3d 251, 267 (S.D.N.Y. 2020) (agencies have knowledge of the appropriate persons with knowledge of relevant files). As such, ICE is entitled to some deference as to search locations. However, ICE has failed to demonstrate that it conducted a reasonably calculated search of OPLA. ICE's declarations are devoid of detail as to how a search of OPLA was conducted for Plaintiffs' Communications Request, or which search terms or custodians were used. Pineiro Decl. ¶ 9; Supp. Pineiro Decl. ¶ 8. Neither does ICE explain why OPLA was not searched for information relevant to Plaintiffs' Data Request. ICE's nondetailed response "raises serious doubts as to the completeness of the agency's search[.]" *Nat'l Day Laborer Org. Network*, 877 F. Supp. 2d at 96.

Plaintiffs also challenge ICE's search terms and methods. Defendants only used the Communications Request search terms agreed upon for former ICE Press Secretary Bryan Cox. Pineiro Decl. ¶¶ 32, 34, 47. ICE used certain terms in only singular or plural forms, did not use Boolean connectors, and in some cases, ICE does not detail what search terms were used. For example, the ICE Attaché for Cameroon Francis Kemp used no search terms and conducted a manual search of his email "for anything pertaining to removal of Cameroonians." *Id.* ¶ 34. ICE did not provide a list of search terms used by some custodians, such as the statistician who searched ICE's Integrated Decision Support System and the ICE Air Operations Unit Chief. *Id.* ¶¶ 30, 34, 37. In addition, some custodians searched their email and shared drive, while others

only searched their email. Defendants argue it is reasonable for ICE to use different search terms depending on the program office or custodian due to their differing roles and different ways of maintaining their files.

While Defendants are correct that agencies have discretion to employ search terms, they have not met their burden to establish that their searches were reasonable. Defendants' submissions are silent as to why certain custodians did not identify which search terms they used, if any, or why in some cases only a custodian's email was searched, and not their shared drive. Without further information on ICE's "logical explanations for each of the decisions it made as to search terms to be used and how to conduct the searches," *Immigrant Def. Project*, 208 F. Supp. 3d at 527–28 (citation and quotations omitted), such as why "certain search terms, clearly relevant, were not used," *Brennan Ctr.*, 377 F. Supp. 3d at 434, the Court cannot conclude that ICE's search was reasonable.

Thus, ICE's motion for partial summary judgment is **DENIED** and Plaintiff's cross motion for partial summary judgment is **GRANTED**. ICE must conduct new searches. The parties should meet and confer regarding a search of (1) OPLA, (2) ICE Attaché for Cameroon, and (3) ERO's Removal Division of special high risk charter flights (SHRC), and submit a joint status report regarding the proposed search and search terms within twenty-one days of this Order.

### C. DHS's Search

DHS's Office of Legal Counsel and its PLCY searched for records. In response to the Communications Request, the parties agreed on twelve potentially relevant custodians, and DHS similarly applied agreed-upon search terms. Pavlik-Keenan Decl. ¶ 12. Some offices determined that they would not have responsive documents. Custodians in the PLCY were instructed to

14

"manually search any applicable computer files, hard copy work folders, or email systems for records potentially responsive to the request." *Id.* ¶ 11.

Plaintiffs argue DHS's search was inadequate because the DHS declaration does not provide information about any search terms or methods used in the manual searches, or which file systems were searched by each custodian. They also argue DHS only made "surface-level attempts" to satisfy its obligations as it did not search other potentially relevant offices. Defendants argue DHS is entitled to summary judgment because it searched relevant offices and applied agreed-upon search terms to 12 custodians.

Plaintiffs' contention is not the standard. Agencies have broad discretion to select search locations based on their expertise. However, DHS's lack of detail as to the search terms or methods PLCY custodians used in their manual searches is cause for concern. Without further information, the Court cannot determine whether DHS's searches of these custodians was reasonably calculated to locate relevant documents.

Therefore, DHS's motion for partial summary judgment is **DENIED** and Plaintiffs' cross motion for partial summary judgment is **GRANTED**. DHS must conduct new searches. The parties should meet and confer regarding a search of the PLCY custodians and submit a joint status report regarding the proposed search terms within twenty-one days of this Order.

### D. State's Search

State searched the systems of the U.S. Embassy in Yaounde, Cameroon, and the eRecords archive of three potentially relevant Bureaus. State searched the emails of several embassy officials. ECF No. 73, Supp. Weetman Decl. ¶ 6. The eRecords search encompassed "any emails to or from employees in the Bureau of Consular Affairs, the Bureau of Population, Refugees, and Migration, or the Bureau of African Affairs; any retired files belonging to

15

employees in the Bureau of Consular Affairs, the Bureau of Population, Refugees, and Migration, or the Bureau of African Affairs; or cables." Weetman Decl. ¶ 22. While the parties reached agreement on almost all the relevant search terms, there was one area of disagreement. Plaintiffs sought terms reflecting "Cameroon" or "Cameroonian" in proximity to "flight" or "plane"; State, concerned that these searches would turn up too many non-responsive records, instead searched for the four specific flight manifest numbers at issue: N225AX, N207XA, ET 501, or ET 905.

Plaintiffs challenge State's search methodology. They argue State should have searched additional offices. Plaintiffs also take issue with embassy officials not employing the same agreed-upon set of search terms used in the eArchive search. However, State explained that embassy officials used simple terms because complex Boolean search strings cannot be used to search records on the Windows Explorer systems used by those offices. Supp. Weetman Decl. ¶ 6. Defendants also searched three agreed-upon offices, ECF No. 34 at 5, and argue Plaintiffs cannot now claim that additional offices should be searched.

State has clearly performed a satisfactory search. It explained why simpler terms were used and employed agreed-upon search terms on custodians. The parties also reached agreement on the relevant offices. Plaintiff has not shown that State's search was in any way unreasonable. Thus, State's motion for partial summary judgment is **GRANTED** and Plaintiffs' cross motion for partial summary judgment is **DENIED**.

## II.    Withholding Responsive Records under FOIA Exemptions

An agency may withhold records responsive to a FOIA request if the withheld information is exempt under FOIA. 5 U.S.C. § 552(b). Defendants withheld various responsive

records pursuant to Exemptions 3, 5, 6 and 7(e). Plaintiffs contend that the three agencies failed to justify many of these withholdings in its *Vaughn* indexes.

FOIA exemptions are exclusive and narrowly construed. *Am. Civil Liberties Union v. Dep't of Def.*, 543 F.3d 59, 66 (2d Cir. 2008), *vacated on other grounds*, 558 U.S. 1042 (2009). "[A] district court must review *de novo* an agency's determination to withhold information requested under the FOIA." *Florez v. Cent. Intel. Agency*, 829 F.3d 178, 182 (2d Cir. 2016) (citing 5 U.S.C. § 552(a)(4)(B)). The agency has the burden of persuasion; "[d]oubts, therefore, are to be resolved in favor of disclosure." *Am. Civil Liberties Union*, 543 F.3d at 66. To justifiably withhold responsive records, an agency must provide "reasonably detailed explanations why any withheld documents fall within an exemption." *Carney*, 19 F.3d at 812. Essentially, "agency affidavits . . . must describe with reasonable specificity the nature of the documents at issue and the justification for nondisclosure—conclusory assertions are insufficient." *N.Y. Times Co. v. Cent. Intel. Agency*, 314 F. Supp. 3d 519, 525 (S.D.N.Y. 2018).

### A.  Exemption 3

Exemption 3 permits agencies to withhold information that is protected from disclosure by statutes other than FOIA. *Ass'n of Retired R.R. Workers v. U.S. R.R. Retirement Bd.*, 830 F.2d 331, 336 (D.C. Cir. 1987). The Supreme Court has adopted "a two-pronged approach to evaluating an agency's invocation of FOIA Exemption 3: First, the court must consider whether the statute identified by the agency is a statute of exemption as contemplated by Exemption 3. Second, the court must consider whether the withheld material satisfies the criteria of the exemption statute." *Wilner*, 592 F.3d at 72 (citing *Cent. Intel. Agency v. Sims*, 471 U.S. 159, 167 (1985)).

### B.  Application

In this case, ICE withheld identifying spreadsheet data relating to Cameroonian applicants for relief from deportation pursuant to Exemption 3, including the names of detainees, their alien numbers, their birthdates, sex, country of citizenship, criminal charge, the final order from the Immigration Judge, and their appeal status. ICE *Vaughn* Index at 1120-1123, 1204-1208, 1212-1215, 1161-1167, 1237. Plaintiffs only challenge the withholding of columns regarding travel documents pending or expiration, a final order from the Immigration Judge, and their appeal status. ECF No. 68-2, Samah Sisay Declaration ("Sisay Decl.") Exs. B.3, B.5, B.6.

ICE cites to privacy concerns under 8 U.S.C. § 1367(a)(2) and 8 C.F.R. § 208.6. Under 8 U.S.C. § 1367(a)(2), no employee or official of the Departments of Justice, State, or Homeland Security may "permit use by or disclosure to anyone (other than a sworn officer or employee of the Department, or bureau or agency thereof, for legitimate Department, bureau, or agency purposes) of any information which relates to an alien who is the beneficiary of an application for relief" under the Violence Against Women Act of 1994 (VAWA) and the Victims of Trafficking and Violence Prevention Act of 2000 (T and U nonimmigrant status for victims of trafficking and other serious crimes). 8 C.F.R. § 208.6, implemented through DHS, prohibits disclosure of "[i]nformation contained in or pertaining to any application for refugee admission, asylum, withholding of removal under section 241(b)(3) of the Immigration and Nationality Act, or protection under regulations issued pursuant to the Convention Against Torture's implementing legislation, records pertaining to any credible fear determination conducted pursuant to § 208.30, and records pertaining to any reasonable fear determination conducted pursuant to § 208.31," except under particular circumstances.

Defendants appear to worry that because this case concerns 81 deportees on 3 flights, any information under 8 U.S.C. § 1367(a)(2) may make the deported Cameroonians easily identifiable. ECF No. 34 at 1. Plaintiffs argue that at the threshold, ICE has not asserted that any of the Cameroonians listed on the three redacted spreadsheets were applicants for VAWA, T, or U status, and have therefore not explained why 8 U.S.C. § 1367(a)(2) applies. The Court agrees.

Plaintiffs do not challenge the redaction of personally identifying information such as alien number and name, and without this information, it seems highly unlikely that the inclusion of information regarding the Cameroonians' travel documents or immigration proceedings would permit a third party to link the identity of an individual to the details of their asylum claims, in violation of § 208.6. U.S. Citizenship and Immigr. Serv., Asylum Div., U.S. Dep't of Homeland Sec., *Fact Sheet: Federal Regulation Protecting the Confidentiality of Asylum Applicants* (2012). *See Unknown Parties v. Johnson*, No. CV-15-00250-TUC-DCB, 2016 WL 8199309, at *5 (D. Ariz. June 27, 2016) (finding VAWA information absent identifying information for any specific detainee did not pose a privacy concern warranting redaction).

As such, ICE has failed to explain why 8 U.S.C. § 1367(a)(2) applies to the requested information, and Exemption 3 does not apply to this information. However, as explained below, this information is properly withheld under Exemption 6.

### C. Exemption 5

Exemption 5 permits agencies to withhold "interagency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5); *U.S. Dep't of Interior & Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). "By this language, Congress intended to incorporate into the FOIA all the normal civil discovery privileges," including the deliberative

process privilege. *Hopkins v. U.S. Dep't of Hous. & Urb. Dev.*, 929 F.2d 81, 84 (2d Cir. 1991). Agencies may withhold documents that originate from a government agency and are susceptible to normal discovery rule privileges. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *United States v. Weber Aircraft Corp.*, 465 U.S. 792, 800 (1984); *Spadaro v. U.S. Customs & Border Prot.*, No. 16-cv-16 (RJS), 2019 WL 1368786, at *5 (S.D.N.Y. Mar. 26, 2019) (citing *Grand Cent. P'ship*, 166 F.3d at 481).

An apparently privileged document may nevertheless be subject to disclosure "if it closely resembles that which FOIA affirmatively requires to be disclosed: 'final opinions ... made in the adjudication of cases,' 'statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register,' and 'administrative staff manuals and instructions to staff that affect a member of the public.'" *Seife v. U.S. Dep't of State*, 298 F. Supp. 3d 592, 613 (S.D.N.Y. 2018) (quoting *Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. U.S. Dep't of Justice*, 697 F.3d 184, 195 (2d Cir. 2012)) (quoting 5 U.S.C. § 552(a)(2)(A)-(C)).

FOIA requires "final opinions," "statements of policy and interpretations which have been adopted by the agency," and "instructions to staff that affect a member of the public" to be indexed. 5 U.S.C. § 552(a)(2). These provisions reflect a "strong congressional aversion to secret (agency) law and [represent] an affirmative congressional purpose to require disclosure of documents which have the force and effect of law." *Sears*, 421 U.S. at 153. The deliberative process privilege, however, protects records that are: (1) pre-decisional, i.e., prepared to assist an agency decisionmaker in arriving at a decision, and (2) deliberative, i.e., related to the policy forming process. *Nat'l Council of La Raza v. U.S. Dep't of Just.*, 411 F.3d 350, 356 (2d Cir. 2005) (internal quotation marks omitted). "[T]he deliberative process privilege protects only

those records that bear on the formulation or exercise of policy-oriented judgment." *Nat. Res. Def. Council v. U.S. Envtl. Prot. Agency*, 19 F.4th 177, 184–85 (2d Cir. 2021) (internal quotation marks omitted). Because "an agency's decision regarding how to communicate its policies and actions to Congress, the public, and other stakeholders can have substantial consequences," such communications decisions "involve 'the formulation or exercise of policy-oriented judgment.'" *Id.* (quoting *Grand Cent. P'ship*, 166 F.3d at 482). "But the agency need not point to a specific decision that it was facing for which the document was prepared—it is enough that the record is connected to 'a specific decisionmaking process.'" *Knight First Amend. Inst. at Columbia Univ. v. U.S. Citizenship & Immigr. Servs.*, 30 F.4th 318, 334 (2d Cir. 2022) (quoting *Nat. Res. Def. Council*, 19 F.4th at 192). Pre-decisional, deliberative documents include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency," as well as "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Grand Cent. P'Ship*, 166 F.3d at 482 (citation omitted); *see also Hopkins*, 929 F.2d at 84–85.

To determine whether a document is deliberative, courts consider whether the document: "(i) formed an essential link in a specified consultative process, (ii) reflect[s] the personal opinions of the writer rather than the policy of the agency, and (iii) if released, would inaccurately reflect or prematurely disclose the views of the agency." *Seife*, 298 F. Supp. 3d at 630 (citation and quotation marks omitted). *See also Nat. Res. Def. Council*, 19 F.4th at 184 (an agency record is deliberative "'if it reflects the give-and-take of the consultative process[.]'") (quoting *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 786 (2021)).

To determine if a document is pre-decisional, courts consider whether the government can: (i) pinpoint the specific agency decision related to the document, (ii) establish its author prepared the document to assist the agency official charged with making the decision, and (iii) verify that the document precedes the related decision. *Seife*, 298 F. Supp. 3d at 630 (quoting *Nat'l Congress for Puerto Rican Rights ex rel. Perez v. City of New York*, 194 F.R.D. 88, 92 (S.D.N.Y. 2000)); *Immigrant Def. Project v. U.S. Dep't of Homeland Sec.*, No. 20-CV-10625 (RA), 2023 WL 1966178, at *6 (S.D.N.Y. Feb. 13, 2023). An agency record may be predecisional even when "'nothing else follows it'" as "'[s]ometimes a proposal dies on the vine' and 'documents discussing such dead-end ideas can hardly be described as reflecting the agency's chosen course.'" *Nat. Res. Def. Council*, 19 F.4th at 184 (quoting *Sierra Club*, 141 S. Ct. at 786).

The deliberative process privilege does not apply to documents that embody law and policy. *Sears*, 421 U.S. at 152–53, 161; *Am. Civil Liberties Union v. Nat'l Sec. Agency*, 925 F.3d 576, 593 (2d Cir. 2019). It does not shield "opinions and interpretations which embody the agency's effective law and policy[.]" *Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't.*, 486 F.Supp.3d 669, 690 (S.D.N.Y. 2020) (internal quotation omitted). The theoretical distinction between pre-decisional advice and post-decisional explanation may not be clear in practice. For example, a document advising an agency leader how to interpret a statute may seem identical to a letter informing an agency subordinate how to interpret a statute. *American Civil Liberties Union*, 925 F.3d at 593. Realizing this potential conflation, the Second Circuit explained the following doctrines to help courts determine if a document is privileged under Exemption 5: "working law" describes post-decisional material, and "express adoption" and "incorporation by reference describe two methods by which pre-decisional material can

become post-decisional." *Id.* "[I]t is the government's burden to prove" that the Exemption 5 privileges apply. *Brennan Ctr.*, 697 F.3d at 201–02.

### D. Application

ICE and State argue certain withholdings fall within Exemption 5. ICE withheld certain internal deliberations relating to organization of removal flights as well as internal ICE discussions regarding how to respond to press inquiries. ICE *Vaughn* Index at 1007-1031, 1161-1167, 1302-130. State withheld certain internal deliberations relating to response to Congressional inquiries; deliberations relating to policy issues surrounding sanctions and removals; deliberations relating to interagency discussions around policy issues; and discussion of policy concerns around upcoming removal flights. State *Vaughn* Index at A-00000563174, A-00000520221, A-00000520216, A-00000520244, A-00000520268.

Plaintiffs only challenge ICE's redacted discussions between ICE employees regarding logistics for removal flights.[6] ICE *Vaughn* Index at 1007-1031; Pineiro Decl. ¶¶ 55-60. The redacted information includes "various options for flight departure times and locations, itineraries, landing locations, flight routes, crew duty information and staging locations." ICE *Vaughn* Index at 8-9. "Plaintiffs seek less redacted versions of emails between ICE Air Operations and ICE employees coordinating an October 2020 removal flight to Cameroon and the Democratic Republic of the Congo." ECF No. 67 at 28. ICE contends the redacted discussions are pre-decisional because they relate to a specific decision and occurred before final logistic arrangements were determined. ICE also argues the discussions are deliberative because they involve a "give-and-take" of flight options that do not represent the agency's final position. ICE believes disclosure of this discussion would harm ICE's interest in candid exchange of

---

[6] ICE also withheld this information pursuant to Exemption 7(E).

information to lead to an informed decision. Pineiro Decl. ¶ 59; ICE *Vaughn* Index at 1007-1031. Plaintiffs argue Exemption 5 is inapplicable to the redacted records about flight logistics because the records discuss the application of existing policy to a certain set of facts relating to the who, what, when, and where of the removal flight.

ICE has met its burden to redact records regarding flight logistics under Exemption 5. The discussions are pre-decisional as they concern multiple flight options before a final decision was reached. The discussions on flight logistics are also deliberative because they reflect the "give-and-take of the consultative process" and the "personal opinions of the writer[s] rather than the policy of the agency." *Nat. Res. Def. Council*, 19 F.4th at 184 (quotation marks omitted); *Grand Cent. P'ship*, 166 F.3d at 482 (internal quotation marks omitted).

State redacted email chains regarding an interagency policy call; email chains regarding policy and sanctions issues relating to a removal flight; and email chains regarding a congressional letter and media coverage of removal flights. State *Vaughn* Index at A-00000563174, A-00000520221, A-00000520216, A-00000520244, A-00000520268. Plaintiffs challenge email chains regarding policy and sanctions issues relating to a removal flight; and email chains regarding media coverage.

State contends the redactions to an email chain regarding an upcoming ICE removal flight to Cameroon are both pre-decisional and deliberate. State argues the email chain is pre-decisional because it predates a final decision on the flight. The email chain is also deliberative because it contains State officials commenting on policy issues related to sanctions and ICE removal orders, and potential responses. *Id.* at A-00000520216. This includes a reference to an executive order by President Biden. State believes the deliberations are part of a "specific decisionmaking process" for its approach to the upcoming removal flight. *Nat. Res. Def. Council*,

19 F.4th at 192. State contends release of the information would chill its internal discussions about policy questions. Plaintiffs argue State's description of the emails as "expressions of policy concerns, responses, and proposals" is too vague. State *Vaughn* Index at 4. They also argue that the communications are about policy decisions ICE and DHS already made in regard to what information to share or not with State. "To be clear, desk and post are supportive of the flight but wanted to ensure their [*sic*] was wider visibility that flights were continuing to Central Africa." ECF No. 68-4. Plaintiffs also challenge State's explanation for redactions to an email thread between State officials with the subject line "Sanctions/Removals" as being too vague. The entry reads: "Department officials commenting on the policy issues related to sanctions and [ICE] removal orders and potential responses the Department should consider." State *Vaughn* Index at 2.

State's explanation for the "Sanctions/Removals" email thread is sufficient to establish it is pre-decisional and deliberative as it pertains to "potential responses" State considered to policy issues relating to Cameroon, DHS, and ICE. It is properly protected under Exemption 5 as a part of State's "specific decisionmaking process[.]" *Nat. Res. Def. Council*, 19 F.4th at 192.

State contends its redacted email chains regarding policy responses and approaches to a Congressional letter and media coverage of the removal flights are also pre-decisional and deliberative. State *Vaughn* Index at A-00000520216. For example, State redacted an email from James Wesley Jeffers, the Press Officer for the Bureau of African Affairs to a Public Affairs Officer in U.S. Embassy Yaoundé with statements cleared through "DHS and AF/C" to be used "if asked anything by local press." ECF No. 68-4, Sisay Decl. Ex. D.1. State argues the email chains are pre-decisional because were "generated before the agency's final decision' regarding how to communicate its policies[.]" *Nat. Res. Def. Council*, 19 F.4th at 185 (quoting *Sierra Club*,

25

141 S. Ct. at 786). State also contends the chains are deliberative because they contain policy discussions in a media article and an "ongoing discussion of the policy concerns and proposals to determine the appropriate response." State *Vaughn* Index at A-00000520216. Plaintiffs argue it makes no difference whether the public statements were actually made to the press or not – the statements are final decisions Defendants made that were cleared "through DHS and AF/C." Ex. D.1. Defendants argue the discussions are about what could be said in response to an inquiry if it were made by the press, and as such are not final decisions.

State's argument is untenable. Draft talking points are not protected by the deliberative process privilege. *Nat'l Day Laborer Org. Network*, 486 F. Supp. 3d at 704 ("To the extent this record would reveal deliberations about how to communicate with the public regarding [a policy], instead of agreed upon talking points, it may be protected by the deliberative privilege process."). Here, it appears some statements were already cleared "through DHS and AF/C." Ex. D.1. State has not shown that the record contains deliberations about the talking points. State is directed to submit this record to the Court for *in camera* inspection.

Thus, ICE's motion for partial summary judgment pursuant to Exemption 5 is **GRANTED**. State's motion for partial summary judgment pursuant to Exemption 5 is **DENIED** with respect to the "Sanctions/Removals" email thread and **GRANTED** in all other respects.

### E.  Exemption 6

Exemption 6 provides that "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy" are exempt from disclosure. 5 U.S.C. § 552(b)(6). "Whether the names and other identifying information about government [employees] may be withheld under Exemption 6 is a two part inquiry." *Wood v. Fed. Bureau of Investigation*, 432 F.3d 78, 86 (2d Cir. 2005). Exemption 6 is intended to "protect

individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *Id.* At step 1, the court "must determine whether the personal information is contained in a file similar to a medical or personnel file." *Id.* "The phrase 'similar files' sweeps broadly and has been interpreted by the Supreme Court to mean 'detailed Government records on an individual which can be identified as applying to that individual.'" *Cook v. Nat'l Archives & Records Admin.*, 758 F.3d 168, 174 (2d Cir. 2014). Emails that "contain the names and email addresses of agency officials, and, thus, can be identified as applying those officials" are considered "'similar files' under Exemption 6." *Seife*, 298 F. Supp. 3d at 623; *see Cook*, 758 F.3d at 174 (finding that emails, which contained names, titles, offices, and phone numbers, qualified as similar files). Additionally, since they may be used to identify an individual, "proposed talking points, draft opening statements, and draft rollout schedules—are also similar files." *Seife*, 298 F. Supp. 3d at 623.

At step 2, "the Court must determine whether disclosure of the personal information would result in a 'clearly unwarranted invasion of personal privacy'" by "balanc[ing] the privacy concerns of the agency officials with the public's interest in disclosure." *Seife*, 298 F. Supp. 3d at 624 (quoting 5 U.S.C. § 552(b)(6)). "An individual's privacy concerns "encompass[ ] all interests involving 'the individual's control of information concerning his or her person.'" *Wood*, 432 F.3d at 88 (quoting *Hopkins*, 929 F.2d at 88). Substantial privacy interests includes a person's name, address, place of birth, employment history, and telephone number. *Adelante Ala. Worker Ctr. v. U.S. Dep't of Homeland Sec.*, 376 F. Supp. 3d 345, 366 (S.D.N.Y. 2019) (citation and quotations omitted).

If a privacy interest is found, it "must be weighed against the public interest that would be advanced by disclosure." *Long v. Off. of Pers. Mgmt.*, 692 F.3d 185, 190 (2d Cir. 2012). The

"only relevant public interest in disclosure to be weighed in this balance is the extent to which disclosure would serve the core purpose of FOIA, which is contribut[ing] significantly to public understanding of the operations or activities of the government." *U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 495 (1994) (quoting *U.S. Dep't of Just. v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 775 (1989) (quotation marks omitted)).

### F. Application

ICE, DHS, and State all withheld the names of low-level employees of the responding agencies and of other agencies, and third parties, phone numbers, email addresses, or other contact information. ICE *Vaughn* Index; Pineiro Decl. ¶¶ 64-73; DHS *Vaughn* Index; Pavlik-Keenan Decl. ¶ 16; State *Vaughn* Index; Weetman Decl. ¶¶ 29-36. ICE also withheld identifying spreadsheet data about Cameroonian applicants for relief from deportation, including the names of detainees, and information regarding detainees' travel documents and immigration proceedings. ICE *Vaughn* Index at 1120-1123, 1204-1208, 1212-1215, 1161-1167, 1237. Plaintiffs only challenge the withholding of columns regarding travel documents pending or expiration, a final order from the Immigration Judge, and their appeal status. Exs. B.3, B.5, B.6.

Plaintiffs again argue that information regarding detainees' travel documents and immigration proceedings are not personally identifying, given the redaction of other personally identifying information, and even if information on their immigration proceedings were identifying, that information would be segregable. Defendants argue that "[g]iven the small number of persons and the large number of sources of information that could potentially be collated by Plaintiffs, the risk of identification is sufficient to support ICE's withholding under Exemptions 6 and 7(C)." ECF No. 71 at 16.

28

ICE has shown that the requested information implicates detainees' privacy interest. Because Plaintiffs seek information on 81 deportees on 3 flights, the Court finds ICE has cause for concern that information on detainees' travel documents and immigration proceedings could be personally identifying.[7]

### G.  Exemption 7

Exemption 7 protects the government from disclosing records or information "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). This includes records with "a rational nexus to the agency's law-enforcement duties, including the prevention of terrorism and unlawful immigration." *Chivers v. U.S. Dep't of Homeland Sec.*, 45 F. Supp. 3d 380, 387 (S.D.N.Y. 2014) (citation omitted). Exemption 7(E) exempts from disclosure records that: 1) "would disclose techniques and procedures for law enforcement investigations or prosecutions"; or 2) "would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E); *see also Allard K. Lowenstein Int'l Project v. U.S. Dep't of Homeland Sec.*, 626 F.3d 678, 681 (2d Cir. 2010). "The threshold inquiry under Exemption 7 is the reason for which material was compiled, and the material should be considered as a whole rather than broken into parts and scrutinized in isolation." *Knight First Amend. Inst.*, 30 F.4th at 328. "[W]hen a larger series of descriptions is compiled to provide comprehensive guidance to employees in the field on how to apply and enforce the laws within the agency's purview, that subsequent compilation enters the potential ambit of Exemption 7(E)." *Id.*

A record discloses "techniques and procedures" if it refers to how law enforcement officials may investigate a crime. *Allard*, 626 F.3d at 682. Guidelines are "indication[s] or

---

[7] Because Defendants have met their burden under Exemption (b)(6), the Court need not analyze whether the same documents are subject to Exemption (b)(7)(C).

outline[s] of future policy or conduct," and generally refer "to resource allocation." *Id.* Guidelines are exempt "from disclosure only if public access to such guidelines would risk circumvention of the law." *Id.* at 681. Stated simply, "techniques or procedures" includes both law enforcement methods—the actions that law enforcement personnel take to identify and neutralize bad actors—as well as the triggers for the application of methods. *Knight First Amend. Inst.*, 30 F.4th at 330 (citing *Allard*, 626 F.3d at 682).

### H.  Application

ICE asserted Exemption 7(E) and withheld in full intelligence reports. ICE *Vaughn* Index at 131-254, 387-510. It also redacted portions of email discussions about scheduling and logistical arrangements of removal flights, *Id.* at 1007-1031, and discussions with a foreign law enforcement agency, *Id.* at 1161-1167.

The fully withheld record is an intelligence report that "contains detailed information on how the intelligence data was collected and techniques and procedures that were used in collecting such data, including various law enforcement databases and coordination with other intelligence communities." ICE *Vaughn* Index at 131-254, 387-510.

ICE withheld information on its removal operations, intelligence gathering, threat assessment, and combatting countersurveillance operations. Pineiro Decl. ¶¶ 76-78. The agency redacted information on logistics for removal flights, ICE *Vaughn* Index at 1007-1031, and argues the information constitutes law enforcement techniques or procedures because "[m]uch of the information pertaining to charter flight itineraries, scheduling of locations, and other details are repeated with future flights[.]" Pineiro Decl. ¶ 77. ICE also redacted an email chain regarding negotiations and discussions between ICE ERO and the Canadian government "relating to

procedural issues surrounding the release or deportation of a particular Cameroonian migrant." ECF No. 62 at 27; ICE *Vaughn* Index at 1161-1167.

Plaintiffs argue that information on logistics for past removal flights should not be protected under Exemption 7(e) because the flights have already taken place. Plaintiffs also contend ICE's withholding of information on removal operations is too vague and that Defendants have not made the case that the information is non-segregable.

This Court has already determined that ICE has met its burden to redact records regarding flight logistics under Exemption 5. Plainly, this information is also properly withheld under Exemption 7(e) as a law enforcement technique or procedure. While Plaintiff is correct that the flights discussed have already occurred, ICE has asserted that these logistics are repeated with future flights. Pineiro Decl. ¶ 77. The fully withheld intelligence report, information on ICE's removal operations, and negotiations with a foreign government are protected under Exemption 7(e) as information "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). The information is compiled to provide "comprehensive guidance to employees in the field on how to apply and enforce the laws within the agency's purview[.]" *Knight First Amend. Inst.*, 30 F.4th at 328.

Accordingly, ICE's motion for summary judgment as to the documents withheld pursuant to Exemption 7(e) is **GRANTED** and Plaintiffs' cross motion for partial summary judgment is **DENIED**.

## I. *In Camera* Review Request

Plaintiffs also asks the Court to conduct an *in camera* review of Defendants' withheld and redacted documents to determine whether the claimed exemptions are reasonable. Courts should only conduct *in camera* review of undisclosed records as a last resort. *See NLRB v.*

*Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978). Records should not be reviewed *in camera* as a substitute for requiring an agency to explain its claimed exemptions in accordance with *Vaughn. Am. Civil Liberties Union v. U.S. Dep't of Justice*, 210 F. Supp. 3d 467, 485 (S.D.N.Y. 2016) (quoting *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 997, 331 U.S. App. D.C. 178 (D.C. Cir. 1998)). The Court finds that *in camera* review is necessary only for the records State withheld under Exemption 5.

## CONCLUSION

For the foregoing reasons, the Court concludes that State proved that it conducted an adequate search, and ICE and DHS failed to prove as a matter of law that they conducted an adequate search. State's motion for partial summary judgment is **GRANTED** and Plaintiffs' cross motion for partial summary judgment is **DENIED**. ICE's motion for partial summary judgment is **DENIED** and Plaintiffs' cross motion for partial summary judgment is **GRANTED**. ICE must conduct new searches. The parties should meet and confer regarding a search of (1) OPLA, (2) ICE Attaché for Cameroon, and (3) ERO's Removal Division of special high risk charter flights (SHRC), and submit a joint status report regarding the proposed search and search terms within twenty-one days of this Order. DHS's motion for partial summary judgment is **DENIED** and Plaintiffs' cross motion for partial summary judgment is **GRANTED**. DHS must conduct new searches. The parties should meet and confer regarding a search of PLCY custodians, and submit a joint status report regarding the proposed search and search terms within twenty-one days of this Order.

The Court also finds that ICE properly withheld documents pursuant to Exemption 5, 6, and 7(e); State did not properly withhold documents pursuant to Exemptions 3 and 5. ICE's motion for partial summary judgment pursuant to Exemptions 5, 6, and 7(e) is **GRANTED** and

Plaintiffs' cross motion for partial summary judgment is **DENIED**. State's motion for partial summary judgment pursuant to Exemption 5 is **DENIED** and Plaintiffs' cross motion for partial summary judgment is **GRANTED**. State is directed to submit the records withheld under Exemption 5 to the Court for *in camera* inspection.

**SO ORDERED.**

**Dated:** **March 12, 2024**
    **New York, New York**

                                    **ANDREW L. CARTER, JR.**
                                    **United States District Judge**